IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–01595–EWN–BNB


MARY FRANCES CASTANEDA,

      Plaintiff,

v.

EAST OTERO SCHOOL DISTRICT R-1,

      Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is a Title VII and Americans with Disabilities Act ("ADA") case.  Plaintiff Mary Frances Castaneda alleges that Defendant East Otero School District R–1 (1) discriminated and retaliated against her in violation of Title VII, and (2) discriminated and retaliated against her in violation of the ADA.  This matter is before the court on "Defendant's Motion for Summary Judgement," filed April 15, 2005.  Jurisdiction is based on 28 U.S.C. § 1331.

## FACTS

### *1.*   *Factual Background*

      In August 1989, Defendant hired Plaintiff, a Mexican-American female, as a Special Education Aide at La Junta High School.  (Def.'s Mot. for Summ. J., Br. in Supp. of Mot. for

Summ. J., Statement of Undisputed Material Facts ¶ 1 [filed Apr. 15, 2005] [hereinafter "Def.'s

Br."]; *admitted at* Pl.'s Resp. to Def.'s Mot. for Summ. J., Resp. to Def.'s Statement of

Undisputed Material Facts ¶ 1 [filed June 13, 2005] [hereinafter "Pl.'s Resp."].)  Plaintiff

remained in that position until 1994, when she requested and transferred to an elementary school

where she continued to work as a Special Education Aide.  (*Id.*)  Plaintiff had an excellent record

of evaluations during the period of her employment and a variety of individuals held her in a high

regard.  (Pl.'s Resp., Statement of Additional Disputed Facts ¶ 1; *admitted at* Def.'s Am. Reply to

Pl.'s Resp. to Def.'s Mot. for Summ. J., Resp. Concerning Disputed Facts ¶ 1 [filed July 29,

2005] [hereinafter "Def.'s Reply"].)

     In February 1999, Plaintiff suffered a work-related injury while assisting a wheelchair-

bound student.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 2; *admitted at* Pl.'s Resp.,

Resp. to Def.'s Statement of Undisputed Material Facts ¶ 2, Statement of Additional Disputed

Facts ¶ 3.)  Plaintiff filed a workers' compensation claim and continued to work through the year.

(*Id.*, Statement of Undisputed Material Facts ¶ 3; *admitted at* Pl.'s Resp., Resp. to Def.'s

Statement of Undisputed Material Facts ¶ 3.)  The physical duties of a Special Education Aide

included: (1) lifting; (2) transferring students from one place to another — physically or with a

lift; (3) pushing wheelchairs up an incline; and (4) engaging in floor activities.  (*Id.*, Statement of

Undisputed Material Facts ¶ 4; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed

Material Facts ¶ 4.)  Plaintiff could not perform these duties without assistance after her injury.

(*Id.*)  Plaintiff did not request accommodations with the Special Education Aide position because

she knew the job was too physically demanding.  (*Id.*)

In the Fall of 1999, Plaintiff requested and received a transfer to a Title I Aide at the same elementary school.  (*Id.*, Statement of Undisputed Material Facts ¶ 3; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 3.)  The physical duties of a Title I Aide at this time included: (1) regularly talking and hearing; (2) regularly standing, walking, and sitting; (3) frequently using hands to finger, handle, and operate office equipment; (4) occasionally reaching with hands and arms; (5) occasionally stooping, kneeling, and crawling; (6) occasionally lifting and/or moving ten pounds; and (7) using close vision, distance vision, peripheral vision, and having the ability to adjust focus.  (Pl.'s Resp., Ex. 11 at 2 [Title I Aide Job Description].)

In the Spring of 2000, while Plaintiff was still on workers' compensation leave, Plaintiff requested a transfer to an elementary school secretary position.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 6; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 6.)  There were rumors circulating that a secretary would be retiring at the end of the year, but the position had not been advertised.  (*Id.*)  At this time, Plaintiff and her doctor had discussed surgery and she was still under her doctor's care because she had not reached maximum medical improvement ("MMI").  (*Id.*)

In June 2000, Defendant posted the position for elementary secretary.  (*Id.*, Statement of Undisputed Material Facts ¶ 7; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 7.)  Plaintiff completed a form request a transfer to an elementary secretary position.  (*Id.*)  At this time, Plaintiff was still on workers' compensation leave, she was

considering surgery, and she had not reached MMI.  (*Id.*)  Defendant asserts that it denied

Plaintiff's request for these reasons.  (*Id.*)

In August 2000, Roy Fritch, Assistant Superintendent, met with Plaintiff and Julie Worley,

Defendant's personnel assistant.  (*Id.*, Statement of Undisputed Material Facts ¶ 8; *admitted at*

Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 8.)  At this meeting, the

three discussed Plaintiff's medical treatments, the doctor's recommendations for surgery, and the

doctor's conclusions that Plaintiff was not at MMI.  (*Id.*)  Despite the fact that Plaintiff was not at

MMI, Plaintiff's doctor released her back to full-time work with restrictions.  (Pl.'s Resp.,

Statement of Additional Disputed Facts ¶ 4, Ex. 7 [Work Restriction Evaluation].)  Plaintiff

expressed a strong desire to return to work.  (*Id.*, Statement of Additional Disputed Facts ¶¶ 6–7;

*admitted at* Def.'s Reply, Resp. Concerning Disputed Facts ¶¶ 6–7.)  Fritch invited Plaintiff to

attend staff training from August 21, 2000 through August 22, 2000.  (Def.'s Br., Statement of

Undisputed Material Facts ¶ 9; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed

Material Facts ¶ 9.)

On January 24, 2001, Plaintiff sent Katrina Robinson, Principal of East Elementary, a

letter of request to transfer to the position of school secretary from her Title I Aide position, as an

accommodation for her restrictions.  (Pl.'s Resp., Statement of Additional Disputed Facts ¶ 19;

*admitted at* Def.'s Reply, Resp. Concerning Disputed Facts ¶ 19.)  Defendant's policy with

respect to an in-building transfer is such that the principal does not need to initiate a competitive

process.  (*Id.*, Statement of Additional Disputed Facts ¶ 20; *admitted at* Def.'s Reply, Resp.

Concerning Disputed Facts ¶ 20.)  The principal has the authority, if she chooses to do so, to place a classified person into the open position without (1) posting the position, (2) interviewing any candidates, or (3) considering other applicants.  (*Id.*)  Fritch did nothing about Plaintiff's request to transfer at this time.  (*Id.*, Statement of Additional Disputed Facts ¶ 26; *admitted at* Def.'s Reply, Resp. Concerning Disputed Facts ¶ 26.)

In March 2001, Plaintiff requested a transfer to a secretarial position at West Elementary. (*Id.*, Statement of Undisputed Material Facts ¶ 13; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 13, Statement of Additional Disputed Facts ¶ 34.) Although there were not any secretarial positions available, rumors were circulating that Carolyn Kibler intended to retire her position as secretary at West Elementary.  (Pl.'s Resp., Statement of Additional Disputed Facts ¶¶ 35, 37; *admitted at* Def.'s Reply, Resp. Concerning Disputed Facts ¶¶ 35, 37.)  Defendant keeps transfer requests on file for a year.  (*Id.*, Statement of Additional Disputed Facts ¶ 36; *admitted at* Def.'s Reply, Resp. Concerning Disputed Facts ¶ 36.)  Fritch put Plaintiff's request to transfer in a file and never forwarded it to Sue Barbee, principal of West Elementary at the time.  (*Id.*, Statement of Additional Disputed Facts ¶ 41; *admitted at* Def.'s Reply, Resp. Concerning Disputed Facts ¶ 41.)  In July 2001, Defendant informed Plaintiff that the secretarial position she applied for had been filled.  (*Id.*, Statement of Additional Disputed Facts ¶ 45; *admitted at* Def.'s Reply, Resp. Concerning Disputed Facts ¶ 45.)

On September 13, 2002, Plaintiff's treating physician placed her at MMI and imposed permanent physical restrictions.  (*Id.*, Statement of Undisputed Material Facts ¶ 14; *admitted at*

Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 14.)  As per the restrictions,

Plaintiff could: (1) sit twenty minutes every three hours for up to three hours per day; (2) walk

fifteen minutes every hour and a half for one and a half hours per day; (3) stand five minutes every

hour for one and a half hours per day; (4) climb only two flights of stairs per day; (5) not lift more

than ten pounds; (6) not walk on uneven surfaces; (7) not be outside when the temperature was

under forty degrees; and (7) not kneel.  (*Id.*, Ex. A–3, 22 [9/13/02 Work Restriction Evaluation].)

In late September 2002, Plaintiff met with Fritch and brought a copy of the work

restriction form, discussing the recited restrictions.  (*Id.*, Statement of Undisputed Material Facts

¶¶ 15, 17, Def.'s Reply, Resp. Concerning Disputed Facts ¶ 52; *admitted at* Pl.'s Resp., Resp. to

Def.'s Statement of Undisputed Material Facts ¶¶ 15, 17, Statement of Additional Disputed Facts

¶ 52.)  Fritch's notes from the meeting indicate that Plaintiff moved carefully, sat gingerly, and

stood several minutes, and appeared uncomfortable.  (*Id.*, Statement of Undisputed Material Facts

¶ 16; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 16.)

Although Fritch did not fully understand the forms, Fritch interpreted the forms to mean that

Plaintiff could only work five and one half hours per day because that was the total amount of

time she could stand, sit, or walk.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 17;

*admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 17.)  According

to Plaintiff, her physician told her that unless she underwent further surgery she would not

improve significantly.[1]  (*Id.*, Statement of Undisputed Material Facts ¶ 18.)  The two also discussed the restrictions Plaintiff's physician imposed upon her.  (*Id.*, Statement of Undisputed Material Facts ¶ 19; *admitted in relevant part at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 19.)  Fritch did not discuss Plaintiff's restrictions with her physician. (Pl.'s Resp., Statement of Additional Disputed Facts ¶ 59; *admitted at* Def.'s Reply, Resp. Concerning Disputed Facts ¶ 59.)  Fritch expressed concern that Plaintiff would not be able to intervene in a scuffle between students or would be bumped or harmed by a student.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 20; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 20.)  Plaintiff also told Fritch that she took Vicodin for pain and that she was involved in pool therapy.  (*Id.*, Statement of Undisputed Material Facts ¶ 21; *admitted in relevant part at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 21.)  At the end of the meeting, Fritch determined that Plaintiff would be unable to return to work, as she could not perform the essential duties and functions of the job and he wanted to avoid putting her in a position where she might re-injure herself.  (*Id.*, Statement of Undisputed Material Facts ¶ 22; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 22.)  Following the meeting, Fritch agreed to look at any subsequent information from Plaintiff's physician.  (*Id.*, Statement of Undisputed Material Facts ¶ 23; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 23.)

---

[1]Plaintiff denies this factual averment, however, Plaintiff does not offer any citation in support of her denial.  Conclusory allegations without more are not sufficient to create a genuine issue of material fact.  *Salguero v. City of Clovis*, 366 F.3d 1175, 1178 (10th Cir. 2004). Accordingly, I deem this fact admitted as true.

Defendant terminated Plaintiff on October 3, 2002.  (*Id.*, Statement of Undisputed Material Facts ¶ 25; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 25.)  On this same day, Fritch informed Plaintiff that there was no longer a Title 1 Aide job description and that he converted the Title 1 Aide position to a Classroom Aide.  (Pl.'s Resp., Statement of Additional Disputed Facts ¶¶ 134, 139; *admitted at* Def.'s Reply, Resp. Concerning Disputed Facts ¶¶ 134, 139.)  The new job description changed the lifting requirement from ten pounds to fifty pounds, thereby taking the job requirements outside of Plaintiff's restrictions.  (*Id.*, Statement of Additional Disputed Facts ¶ 132; *admitted in relevant part at* Def.'s Reply, Resp. Concerning Disputed Facts ¶ 132.)  When Fritch created the job description for Classroom Aide, he decided to do away with the Title 1 Aide job description in the sense that Defendant would no longer use that description.  (*Id.*, Statement of Additional Disputed Facts ¶ 135; *admitted in relevant part at* Def.'s Reply, Resp. Concerning Disputed Facts ¶ 135.)  The Board never eliminated the Title 1 Aide position.  (*Id.*, Statement of Additional Disputed Facts ¶ 136; *admitted in relevant part at* Def.'s Reply, Resp. Concerning Disputed Facts ¶ 136.)

On October 9, 2002, Fritch received a letter via facsimile from Plaintiff's physician purporting to provide some clarification on some of Plaintiff's restrictions.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 24; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 24.)  The letter did not change Fritch's previous interpretation nor his concern that Plaintiff might re-injure herself.  (*Id.*)

On June 2, 2003, Plaintiff applied for a K–2 elementary school secretary at La Junta

Primary School — formerly West Elementary School.  (Def.'s Br., Statement of Undisputed

Material Facts ¶ 35; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material

Facts ¶ 35.)  Defendant contends that prior to interviewing any candidates, Sue Barbee, Principal

of La Junta Primary School, followed a process she prepared for selecting office staff at the

school.  (*Id.*, Statement of Undisputed Material Facts ¶ 35.)  Barbee testified that she was not

sure whether she implemented the selection process before or after interviewing for the position

for which Plaintiff applied.  (*Id.*, Ex. A–1 Barbee at 101 [Dep. of Sue Barbee].)  Plaintiff contends

that Barbee selected Teradette Wilson for the position in May 2003, after the time Barbee learned

of Plaintiff's interest and before Barbee received Plaintiff's application.  (Pl.'s Resp., Resp. to

Def.'s Statement of Undisputed Material Facts ¶ 35.)  In support, Plaintiff attaches a list dated

May 2003, which designates Wilson as the "new hire as Secretary."  (*Id.*, Ex. 14 at 5 [List of

Resignations/Transfers/Vacancies May 2003].)  Defendant asserts the Board did not have

Wilson's name until July 2003 and the only reason her named appeared on the May 2003 list is

because Sheryl Wahlert, executive secretary to the Board, forgot to change the date of the

document.  (Def.'s Reply, Reply Concerning Undisputed Facts ¶ 35, Ex. A–7 ¶ 3 [Aff. of Sheryl

Wahlert].)[2]

In June 2003, Barbee interviewed four people for the position.  (*Id.*, Statement of

Undisputed Material Facts ¶ 39; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed

---

[2]Defendant alleges that in addition to Wahlert's affidavit, this statement is supported by an attachment to that affidavit.  (Def.'s Reply, Reply Concerning Undisputed Facts ¶ 35.)  This court is not aware of any attachment to Wahlert's affidavit.

Material Facts ¶ 39.)  Barbee interviewed Plaintiff because she had good people skills and work experience that looked like it might transfer to this position.  (*Id.*)  Barbee testified that no one asked her to interview Plaintiff and Fritch told her not to treat Plaintiff any differently than she would anyone else who applied for the position.  (*Id.*, Statement of Undisputed Material Facts ¶ 40; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 40.)  The individual whom Barbee hired for the position had previous experience in a job similar to the one at the school and her references were very complimentary.  (*Id.*, Statement of Undisputed Material Facts ¶ 43; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 43.)

**2.      *Procedural History***

On August 2, 2004, Plaintiff filed a complaint in this court.  (Compl. and Jury Demand [filed Aug. 2, 2004] [hereinafter "Compl."].)  Plaintiff asserted two claims for relief: (1) Title VII race discrimination and retaliation; and (2) discrimination and retaliation in violation of the ADA.  (*Id.* ¶¶ 31–37.)  On September 13, 2004, Defendant answered Plaintiff's complaint.  (Answer [filed Sept. 13, 2004].)

On April 15, 2005, Defendant filed a motion for summary judgment.  (Def.'s Br.) Defendant argues that Plaintiff cannot establish a claim for Title VII race discrimination because Plaintiff cannot prove that her termination or Defendant's failure to hire her was motivated by race.  (*Id.* at 13–17.)  Defendant contends that Plaintiff cannot establish a retaliation claim under Title VII because the alleged retaliation is not closely connected in time to the protected activity.

(*Id.* at 18.)   Additionally, Defendant asserts that Plaintiff is not disabled under the ADA and she is not a qualified individual because she cannot perform the essential functions of her position with or without reasonable accommodations.  (*Id.* at 18–21.)  Finally, Defendant alleges that Plaintiff cannot establish retaliation under the ADA because Plaintiff cannot establish a causal connection between her request for accommodation and her termination.  (*Id.* at 26.)  On June 13, 2005, Plaintiff filed a response to Defendant's motion for summary judgment.  (Pl.'s Resp.)  On July 29, 2005, Defendant filed a reply in support of its motion for summary judgment.  (Def.'s Reply.)  This matter is fully briefed.

## ANALYSIS

### 1.       *Standard of Review*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c) (2003); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Celotex Corp.*, 477 U.S. at 325).  The

nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "'Only disputes over facts that might affect the outcome of the suit under governing law will preclude the entry of summary judgment.'" *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998) (quoting *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record must be viewed in the light most favorable to the nonmoving party. *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 [10th Cir. 1990].)

**2.      *Evaluation of Plaintiff's Claims***

**a.      *Title VII Race Discrimination***

If, as here, Plaintiff's claim is based upon a disparate treatment analysis in reliance upon indirect evidence, she must first meet her initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Greene*, 411 U.S. 792, 802 (1973). Once Plaintiff establishes a prima facie case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Id.* "At the summary judgment stage, it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual — i.e. unworthy of belief." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). If Plaintiff

succeeds both in making out a prima facie case of discrimination and in showing that Defendant's

reasons are pretextual, Plaintiff's claims will withstand summary judgment. *Id.*      Plaintiff

asserts three alleged adverse employment actions as the basis of her Title VII discrimination claim.

First, Plaintiff contends that Defendant discriminated against her on the basis of her race when it

refused to reinstate her to her position during the years 2000 and 2001.  (Compl. ¶ 32; Pl.'s Resp.

at 38–40.)  Plaintiff contends that this action amounts to an involuntary suspension.  (Pl.'s Resp.

at 38–39.)  Second, Plaintiff contends that Defendant discriminated against her on the basis of

race when it terminated her employment.  (Pl.'s Resp. at 40–42.)  Finally, Plaintiff alleges that

Defendant discriminated against her on the basis of her race when it failed to hire her in 2003.  I

evaluate each basis of race discrimination in turn.

### (1)      Plaintiff's Alleged Suspension

Plaintiff alleges that

> [t]he facts are undisputed that Plaintiff was released to return to work by her
> workers' compensation doctor as of August 21, 2000 . . . that Plaintiff returned to
> work, that on August 23, 2000, she was sent home against her will, that
> [Defendant] never allowed her to return to work despite her various attempts to
> do so in 2001 and 2002 . . . Plaintiff views this as being placed on involuntary
> medical leave or indefinite suspension.

(Pl.'s Resp. at 39.)  Notwithstanding the date on which Defendant terminated Plaintiff's

employment, Plaintiff refers to two distinct periods of time wherein Defendant did not reinstate

Plaintiff to her position as Title 1 Aide.  (*Id.* at 38.)  Plaintiff asserts that these acts amount to

"involuntary suspension."  (*Id.* at 38–39.)  These acts occurred in 2000 and 2001.  (*Id.*)  Plaintiff

filed her EEOC complaint at the earliest on February 25, 2003.  (Def.'s Br., Statement of

Undisputed Material Facts ¶ 44; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed

Material Facts ¶ 44.)  Assuming Defendant's refusal to reinstate Plaintiff to her position as Title I

Aide amounts to an adverse employment action, Plaintiff did not file her EEOC complaint within

300 days of the occurrence.  *See Croy v. Cobe Lab., Inc.*, 345 F.3d 1199, 1202 (10th Cir. 2003).

The timing requirement is a prerequisite to a civil suit.  *See Jackson v. Continental Cargo-*

*Denver*, 183 F.3d 1186, 1187 (10th Cir. 1999).  Thus, Plaintiff's allegations with respect to

Defendant's alleged failure to re-instate her in 2000 and 2001 are time-barred.

Plaintiff does not dispute that she did not file her EEOC complaint within 300 days of the

alleged discriminatory conduct in 2000 and 2001.  (Pl.'s Br. at 45–46.)  Instead, Plaintiff contends

that Defendant's acts are "more like a hostile environment case than a separate and discrete,

discriminatory acts."  (*Id.* at 46.)  Specifically, Plaintiff alleges that Defendant's "perpetual

exclusion of Plaintiff from the workplace for a period of two years was like an indefinite

suspension — more akin to the 'glass ceiling' discussed in *Croy* [] . . . than a couple of 'discrete

incidents' as Defendant conclusorily asserts."  (*Id.*)  Plaintiff essentially argues that this is a

continuing-violations doctrine case.  (*Id.*)  The Tenth Circuit in *Croy* explained the continuing-

violations doctrine.  The Court held that the continuing-violations doctrine may be invoked either

by showing "(1) a series of related acts taken against a single individual, one or more of which

falls within the limitations period, or (2) the maintenance of a company-wide policy of

discrimination both before and during the limitations period."  *Croy*, 345 F.3d at 1202.  Following

the district court's initial ruling in *Croy*, but prior to its final order, the Supreme Court explained

that "discrete acts of discrimination are not actionable if they fall outside the limitations period, even if they are related to acts which fall within the limitations period." *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 [2002]).  The *National Railroad Passenger* Court specifically mentioned a failure to promote as the type of discrete act of discrimination which is only actionable if it occurred within the limitations period.  *Id.*  The *National Railroad Passenger* Court also recognized that claims such as hostile work environment claims were "different in kind from discrete acts" because the discriminatory act occurs over a series of days or years and "a single act of harassment may not be actionable on its own."  *Nat'l R.R. Passenger*, 536 U.S. at 115–17.  In all such cases, "'provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court of the purposes of determining liability.'"  *Croy*, 345 F.3d at 1202 (quoting *Nat'l R.R. Passenger*, 536 U.S. at 117.)

Here, Plaintiff's claim regarding suspension is not akin to a hostile work environment claim.  Plaintiff does not allege repeated conduct, some of which is actionable and some not, over a long period of time.  Rather, Plaintiff alleges two discrete incidences wherein she purportedly requested to be re-instated and Defendant allegedly denied her request.  (Pl.'s Resp. at 38–39, 46.)  Plaintiff asserts that over the years of 2000 and 2001, Defendant suspended her involuntarily. (*Id.*)  Even assuming Plaintiff's claims regarding suspension were akin to a hostile work environment claim, Plaintiff does not allege any acts contributing to the claim that occurred within the filing period.  Neither of these time periods fall within the limitations period.

Accordingly, Plaintiff's allegations regarding involuntary suspension are not actionable.

Further, even assuming Plaintiff's claims of reinstatement/involuntary suspension fell within the limitations period, Plaintiff does not assert a proper claim for discriminatory suspension. Plaintiff contends Defendant's alleged refusal to re-instate her while she was on workers' compensation leave amounts to an "involuntary suspension case." (*Id.*) In support, Plaintiff cites *Hysten v. Burlington N. and Santa Fe Ry.*, 296 F.3d 1177, 1181 (10th Cir. 2002). In *Hysten*, the defendant suspended the plaintiff after the plaintiff "'went ballistic'" and left a meeting. *Id.* at 1179. The court in *Hysten* applied a less rigid three part *prima facie* case. *Id.* at 1181–82. The court's rationale for doing so was that a traditional suspension case does not fall into any of the traditional categories, "e.g., hiring or discharge." *Id.* at 1182. Here, unlike the Plaintiff in *Hysten*, Plaintiff was on workers' compensation leave during the time period wherein she complains she was suspended. (Def.'s Br., Statement of Undisputed Material Facts ¶ 14; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 14.) Defendant did not suspend Plaintiff from work. The instant case is not one of disciplinary suspension or involuntary suspension. Plaintiff's only actionable claims are the discharge and failure to hire claims.

### (2)    *Discharge*

#### (A)    *Prima Facie Case*

In order to show a prima facie case of discriminatory discharge, Plaintiff must demonstrate: (1) she is a member of a protected class; (2) she was qualified for the position; (3)

despite her qualifications she was discharged; and (4) the job was not eliminated after the

discharge. *Hysten*, 296 F.3d at 1181.  Defendant concedes that Plaintiff can establish a prima

facie case with respect to prongs one and four.  (Def.'s Br. at 14.)  Accordingly, I only need to

discuss prongs two and three.

Defendant asserts that Plaintiff cannot establish that she was qualified for the position of

Title I Aide "because of the severe permanent restrictions imposed upon Plaintiff by her physician

in September of 2002."  (*Id.*)  Defendant confuses Plaintiff's prima facie case with Defendant's

alleged legitimate nondiscriminatory reason for discharging Plaintiff.  In other words, Defendant's

"reasons for the adverse action are not 'appropriately brought as a challenge to the sufficiency of

[Plaintiff's] prima facie case.'"  *Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1470 (10th Cir. 1992)

(quoting *Yarbrough v. Tower Oldsmobile, Inc.*, 789 F.2d 508, 512 [7th Cir. 1986]).  Rather, the

appropriate inquiry during the prima facie stage of a discriminatory discharge case is whether a

plaintiff can establish

> by credible evidence that she continued to posses the objective qualifications she
> held when she was hired, or by her own testimony that her work was satisfactory,
> even when disputed by her employer, or by evidence that she has held per position
> for a significant period of time.

*Id.*  Here, Plaintiff established that she satisfactorily performed her position until she went on

workers' compensation leave.  (Pl.'s Resp., Statement of Additional Disputed Facts ¶ 1; *admitted*

*at* Def.'s Reply, Reply Concerning Undisputed Facts ¶ 1.)  Defendant has not made any

allegations regarding Plaintiff's knowledge, skill, or ability to perform the position.  Accordingly,

Plaintiff established a prima facie case with respect to her discriminatory discharge claim.

### (B)     *Legitimate Non-Discriminatory Reason*

If the plaintiff establishes a prima facie case, "the defendant must carry the burden to

provide a legitimate nondiscriminatory reason for the plaintiff's termination." *McKnight* v.

*Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998).  Defendant's burden is:

> merely to articulate through some proof a facially nondiscriminatory reason for the
> termination; the defendant does not at this stage of the proceedings need to litigate
> the merits of the reasoning, nor does it need to prove that the reason relied upon
> was bona fide, nor does it need to prove that the reasoning was applied in a
> nondiscriminatory fashion.  However, the proffered reason for the action taken
> against the minority employee must be reasonably specific and clear.

*E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1316 (10th Cir. 1992) (citations omitted) (footnote

omitted).  Defendant asserts it terminated Plaintiff because "of the severe permanent restrictions

imposed upon Plaintiff by her physician in September of 2002."  (Def.'s Br. at 14.)  Defendant's

explanation as to why it terminated Plaintiff is more than sufficient to meet Defendant's burden at

this stage.

### (C)     *Pretext*

If the defendant meets its burden at the second stage of showing a "legitimate

nondiscriminatory reason for plaintiff's termination," the plaintiff can still prevail if she can show

"pretext."  *McKnight*, 149 F.3d at 1128.  "Pretext can be shown by such weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered

legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of

credence and hence infer that the employer did not act for the asserted nondiscriminatory

reasons."  *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1250 (10th Cir. 2002) (quoting *Morgan*

*v. Hilti, Inc.*, 108 F.3d 1319, 1323 [10th Cir.1997].)  Plaintiff offers two alleged examples of pretext regarding her discharge.

First, Plaintiff asserts that Defendant's legitimate non-discriminatory reason is "suspect in light of . . . Defendant's admission that eight months after her termination, she was qualified to perform secretarial duties . . . ."  (Pl.'s Resp. at 44.)  Defendant conceded this point solely for the prima facie case regarding Plaintiff's claim that Defendant failed to hire her in violation of Title VII.  (Def.'s Br. at 14.)  Plaintiff's argument as to this point is ironic considering Plaintiff argued vehemently against Defendant using its legitimate nondiscriminatory reason to defeat Plaintiff's prima facie case.  (Pl.'s Resp. at 40–41.)  Plaintiff's argument as to this point is unavailing.

Next, Plaintiff asserts that:

> Fritch's avowed confusion over Plaintiff's restrictions, the fact that the doctor released her to work full time, Fritch's blatant refusal to consider the whole form in his decision of whether to return Plaintiff to work and his selectivity in discussing only those parts of the form that suited his purposes of keeping Plaintiff out of the workplace show pretext.

(Pl.'s Resp. at 44–45.)  In evaluating pretext, the court must be careful not to second-guess business decisions made by employers, in the absence of some evidence of impermissible motives. *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004); *see also Lucas v. Dover Corp., Norris Div.*, 857 F.2d 1397, 1403–04 (10th Cir. 1988).  The "'relevant inquiry is not whether [Defendant's] proffered reasons were fair or correct, but whether [Defendant] honestly believed those reasons and acted in good faith upon those beliefs.'"  *Id.* (quoting *Bullington v. United Airlines, Inc.*, 186 F.3d 1301, 1318 [10th Cir. 1999]).  Title VII does not require an employer's

business decisions to be wise or logical — just nondiscriminatory. *Beaird v. Seagate Tech., Inc*, 145 F.3d 1159, 1169 (10th Cir. 1998). Here, Defendant, at least implicitly, chose to terminate Plaintiff's employment based on Fritch's interpretation of Plaintiff's physician's forms and in an effort to prevent Plaintiff from further injuring herself. Plaintiff asserts that Fritch refused to consider the whole form and only considered "those parts of the form that suited his purposes of keeping Plaintiff out of the workplace." (Pl.'s Resp. at 44.) Plaintiff does not offer any support for this allegation. Thus, the sole question is whether Defendant's judgment is so implausible, incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief. *Stover*, 382 F.3d at 1076. The evidence, consisting solely of Plaintiff's conclusory allegation, is insufficient to show pretext. This is so especially in light of the lack of evidence showing a racially discriminatory motive. Thus, viewing the facts in a light most favorable to Plaintiff, Plaintiff cannot demonstrate that Fritch's reasons for terminating Plaintiff were a pretext of race discrimination. Accordingly, Defendant is entitled to summary judgment on Plaintiff's Title VII discriminatory discharge claim.

### (3)     *Failure to Hire*

Plaintiff's third allegation of racial discrimination involves Defendant's failure to hire her for the secretarial position in 2003. (Pl.'s Resp. at 42; Def.'s Br. at 14.) Defendant concedes that Plaintiff can "establish a prima facie case of failure to hire by showing that she was qualified for the secretarial position for which she applied in June 2003, that she was not hired for that position and that the position was left open or was filled." (Def.'s Br. at 14.) Thus, I do not need to

evaluate Plaintiff's prima facie case with respect to Plaintiff's failure to hire claim.

### *(A)      Legitimate NonDiscriminatory Reason*

As stated above, once Plaintiff establishes a prima facie case, "the defendant must carry the burden to provide a legitimate nondiscriminatory reason for the plaintiff's termination." *McKnight*, 149 F.3d at 1128.   Defendant asserts it failed to hire Plaintiff because "another applicant was more qualified, not because of her race." (Def.'s Br. at 14.)   Defendant's explanation as to why it terminated Plaintiff is more than sufficient to meet Defendant's burden at this stage.

### *(B)      Pretext*

With respect to Plaintiff's failure to hire claim, Plaintiff offers two examples of pretext. First, Plaintiff contends that "Defendant has conceded that with regard to Plaintiff's non-selection to [sic] the secretarial position in the summer of 2003 — Plaintiff was no longer viewed as unqualified . . ." (Pl.'s Resp. at 43.)   Plaintiff asserts that this statement is inconsistent with Defendant's concession that Plaintiff was qualified for the secretarial position.   (*Id.*)   First, as discussed above, Defendant conceded this point solely with respect to the prima facie case.   Thus, Plaintiff's argument as to this point is unavailing.   Additionally, Plaintiff's argument as to this point does not refute Defendant's legitimate non-discriminatory reason.   Defendant does not dispute that Plaintiff was qualified, Defendant simply stated that "another applicant was more qualified." (Def.'s Br. at 14.)   Thus, Plaintiff cannot demonstrate pretext as to this point.

Second, Plaintiff contends that Defendant's attempt "to show that the selection process

was neutral and objective, and that Plaintiff was simply not the best qualified candidate . . . is

unworthy of belief." (Pl.'s Resp. at 45.) Plaintiff asserts that the selection process was a sham

and the selectee, Wilson, was hired and approved by the board in May 2003. (*Id.*)

As noted above, Plaintiff applied, on June 2, 2003, for a secretarial position with La Junta

Primary School — formerly West Elementary School. (Def.'s Br., Statement of Undisputed

Material Facts ¶ 35; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material

Facts ¶ 35.) The facts already developed in the "Factual Background" part of this decision satisfy

the court that there is a genuine issue of fact regarding whether the position had already been

filled prior to Plaintiff's application, yet after Plaintiff expressed interest in the position.

Reasonable minds could differ regarding whether the list containing Wilson's name was created in

May 2003 or in fact was created in July 2003, Wahlert simply having forgotten to change the

date. Plaintiff has demonstrated pretext with respect to this issue. Accordingly, Defendant is not

entitled to summary judgment on Plaintiff's claim alleging failure to hire in violation of Title VII.

### b.    *ADA Discrimination*

Plaintiff's second claim for relief alleges discrimination and retaliation in violation of the

ADA. (Compl. ¶¶ 34–37.) The burden shifting analysis established in *McDonnell Douglas*

generally applies to ADA disparate treatment claims. *See Hardy v. S.F. Phosphates Ltd. Co.*, 185

F.3d 1076, 1079 (10th Cir. 1999). Under that analysis, Plaintiff carries the burden of raising a

genuine issue of material fact on each element of her prima facie case. If Plaintiff establishes a

prima facie case, the burden shifts to Defendant to offer a legitimate nondiscriminatory reason for

its employment decision.  *Id.*  If Defendant articulates a nondiscriminatory reason, the burden

shifts back to Plaintiff to show a genuine issue of material fact as to whether Defendant's reason

for the adverse employment action is pretextual.  *Id.* at 1079–80.

### *(1)      Prima Facie Case*

To establish a prima facie case under the ADA, Plaintiff must show: (1) she is disabled

within the meaning of the ADA; (2) she is qualified, that is, with our without reasonable

accommodation (which she must describe), she is able to perform the essential functions of the

job; and (3) that Defendant terminated or failed to hire her because of her disability.  *White v.*

*York Int'l Corp.*, 45 F.3d 357, 360–61 (10th Cir. 1995).  Defendant disputes all three prongs of

the prima facie case.  (Def.'s Br. at 19–23.)

### *(A)      Plaintiff Is Disabled Within the Meaning of the ADA*

Defendant contends that Plaintiff is not disabled because she does not have an impairment

that substantially limits any major life activities.  (Def.'s Br. at 19–21.)  The term "disability" for

purposes of the ADA is defined as: "(A) a physical or mental impairment that substantially limits

one or more of the major life activities of such individual; (B) a record of such an impairment; or

(C) being regarded as having such an impairment."  42 U.S.C. § 12102(2) (2005).  I only address

section A.

Defendant asserts that "Plaintiff here has an impairment that does not substantially limit

her ability to engage in activities that are of central importance to her life."  (Def.'s Br. at 20–21.)

The definition under section A contains three elements.  *Doebele v. Sprint/United Mgmt. Co.*, 342

F.3d 1117, 1129 (10th Cir. 2003).  First, Plaintiff must have a recognized impairment; second,

Plaintiff must identify one or more appropriate major life activities; and third Plaintiff must show

that the impairment substantially limits one or more of those activities.  *Id.*

> Whether the plaintiff has an impairment within the meaning of the ADA is a
> question of law for the court to decide.  Whether the conduct affected is a major
> life activity for purposes of the Act is also a legal question for the court. . .
> Ascertaining whether the impairment substantially limits the major life activity is a
> factual question for the jury.

*Id.* (internal citations omitted).  Here, Defendant does not dispute that Plaintiff has a recognized

impairment.  (Def.'s Br. at 19–21.)  Next, Plaintiff identified lifting as the major life activity

affected by her impairment.  (Pl.'s Resp. at 52.)  Plaintiff's physician restricted Plaintiff

permanently from lifting over ten pounds.  (Def.'s Br., Statement of Undisputed Material Facts ¶

14; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed Material Facts ¶ 14.)  The

Tenth Circuit has held that lifting is a major life activity.  *Lowe v. Angelo's Italian Foods, Inc.*, 87

F.3d 1170, 1174 (10th Cir. 1996).  The Court in *Lowe* determined that the plaintiff's fifteen

pound lifting restriction was substantially limiting on its face.  *Id.*  Thus, here, Plaintiff has created

a genuine issue of material fact with respect to whether her impairment substantially limited the

major life activity of lifting.  *Id.*; *see also Luck v. Ryder Integrated Logistics*, 238 F.3d 1237,

1240 (10th Cir. 2001) (citing *Lowe*, 87 F.3d at 1174.)  Accordingly, Plaintiff has satisfied her

burden at stage one of the prima facie case.

Defendant argues that Plaintiff has failed to present evidence comparing her ability to lift

with the ability of the average person.  (Def.'s Reply at 19.)  Plaintiff did not need to produce

comparative evidence.  "*Lowe* . . . stands for the proposition that comparative evidence is not required as a matter of law to withstand a motion for summary judgment where the impairment appears substantially limiting on its face." *Lusk*, 238 F.3d at 1240.  Here, Plaintiff's permanent lifting restriction was less than that of the plaintiff in *Lowe*.  It follows that Plaintiff's lifting restriction is substantially limiting on is face.  Accordingly, Plaintiff did not need to produce evidence comparing her ability to lift with the ability of the average person in order to withstand summary judgment.

### *(B)    Qualified Individual*

Defendant alleges that "[e]ven if Plaintiff is considered disabled under the ADA, she is not a qualified individual under the ADA because she could not perform the essential functions of her position with or without reasonable accommodation."  (Def.'s Br. at 21.)  The ADA defines a "qualified individual" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8); *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1190 (10th Cir. 2003).  To determine whether a person is qualified under the ADA, the Tenth Circuit has promulgated a two-part test.  *Davidson*, 337 F.3d at 1190.  First, the court must determine whether the individual can perform the essential functions of the job.  *Id.*  Second, "if (but only if) the court concludes that the individual is unable to perform the essential functions of the job, the court determines whether any reasonable accommodation by the employer would enable him to perform those functions."  *Id.*

At the outset, I note that Defendant does not discuss whether Plaintiff is a qualified individual.  Defendant's opening and reply briefs focus exclusively on whether Plaintiff was offered an accommodation and whether an accommodation was feasible.  (Def.'s Br. at 21–22; Def.'s Reply at 19–21.)  First I must determine whether Plaintiff can perform the essential functions of the employment position she holds or desires before I determine whether any accommodation was necessary or appropriate.   Plaintiff bears the burden of showing she is able to perform the essential functions of her job.  *Mason v. Avaya Communications, Inc.*, 357 F.3d 1114, 1119 (10th Cir. 2004).

> Evidence considered in determining whether a particular function is essential includes: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the work experience of past incumbents in the job.

*Id.*  The ADA requires that courts consider "the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8).  The employer describes the job functions required to perform that job.  *Mason*, 357 F.3d at 1119.  Plaintiff asserts that she can perform the essential functions of the Title 1 Aide or secretary positions.  (Pl.'s Resp. at 55–57.)  I evaluate each position in turn.

Viewing the facts in a light most favorable to Plaintiff, there are genuine issues of fact regarding the essential functions of the Title 1 Aide position in general, and whether Plaintiff can perform those.  Again, Defendant does not offer any argument that counsels against this result.  Thus, with respect to the Title 1 Aide position, I do not need to address whether Defendant

provided Plaintiff reasonable accommodations, because Plaintiff has demonstrated genuine issues of fact regarding whether she could perform the functions of the Title 1 Aide position prior to her termination.

Next, Plaintiff asserts that she can perform the essential functions of the secretary position. (Pl.'s Resp. at 57.)  Defendant's sole argument against this proposition Defendant states: "whether [Plaintiff] could perform the essential functions of the position of school secretary did not become an issue as she was not hired."  (Def.'s Reply at 20.)  Defendant's argument is unintentionally humorous.  Plaintiff filed the instant lawsuit against Defendant stating, amongst other things, that Defendant "failed and refused to place [Plaintiff] in positions for which she was qualified . . . all in violation of the ADA."  (Compl. ¶ 36.)  In other words, Plaintiff is suing Defendant for failure to hire in violation of the ADA.  (*Id.*)  Thus, Defendant's position that Plaintiff's ability to perform the essential functions of the position of school secretary was not an issue because she was not hired, is absurd.  The "essential functions" inquiry is central to a Plaintiff's prima facie case under the ADA.  Defendant cannot sidestep this inquiry and honestly expect to receive summary judgment.  Accordingly, Plaintiff has carried her burden with respect to this element of the prima facie case.

### (C)   *Plaintiff Suffered An Adverse Employment Action Because of Her Disability*

Finally, Plaintiff can establish the third prong of her ADA claim.  Plaintiff asserts that she suffered an adverse employment action because of her disability.  (Pl.'s Resp. at 64.)  Specifically, Plaintiff contends that Fritch fired Plaintiff from her job as a Title 1 Aide because of her disability.

(*Id.*)  Further, Plaintiff alleges that Defendant did not hire for the secretarial position because of

her disability.  (*Id.*)  Defendant does not offer a single argument that counsels against this result.

Thus, Plaintiff carried her burden at this stage of the prima facie case.  Accordingly, Plaintiff has

demonstrate sufficient facts to establish a prima facie case of discriminatory discharge and failure

to hire under the ADA.

### (2)     *Legitimate Non-Discriminatory Reason*

Defendant does not specifically offer a legitimate nondiscriminatory reason for terminating

or failing to hire Plaintiff in any of its submissions.  Defendant cannot prevail on summary

judgment without articulating a legitimate nondiscriminatory reason for the adverse employment

activity.  Plaintiff suggests Defendant's legitimate nondiscriminatory reason for terminating

Plaintiff is that "Plaintiff's restrictions were too severe to accommodate, falling back on Fritch's

'understanding' that Plaintiff could only work [five and one half] hours per day."  (Pl.'s Resp. at

65.)  I will therefore assume for purposes of this Order and Memorandum of Decision that

Defendant offered a legitimate nondiscriminatory reason for terminating Plaintiff.

Additionally, Defendant did not offer a legitimate nondiscriminatory reason for failing to

hire Plaintiff.  I will assume for purposes of this Order and Memorandum of Decision that

Defendant would utilize the same legitimate nondiscriminatory reason as it did for Plaintiff's Title

VII claim.  Specifically, I assume Defendant would argue that it did not hire Plaintiff because it

felt Wilson was more qualified.  (Def.'s Br. at 14.)  Despite Defendant's failure to offer a

legitimate non-discriminatory reason for failing to hire Plaintiff, I evaluate Plaintiff's pretext

arguments below.[3]

### (3)    *Pretext*

First, with respect to Plaintiff's claim that Defendant terminated her in violation of the ADA, Plaintiff cannot demonstrate pretext.  Plaintiff suggests that Defendant's reason for terminating Plaintiff was that "Plaintiff's restrictions were too severe to accommodate, falling back on Fritch's 'understanding' that Plaintiff could only work [five and one half] hours per day." (Pl.'s Resp. at 65.)  As discussed above, (*Analysis* § 2(a)(2)(C), *supra*), Plaintiff cannot show that Defendant's reason for terminating Plaintiff was a pretext for discrimination.

Additionally, with respect to Plaintiff's discriminatory discharge claim under the ADA, Plaintiff contends that Defendant:

> does not employ anyone with a known disability.  This can only mean one of two things — there is an unwritten practice to avoid employing or retaining persons with disabilities, or there are employees with disabilities, but no one dare ask for an accommodation, since doing so subjects an employee to the kind of unfair treatment to which Plaintiff was subjected.

(Pl.'s Resp. at 66.)  Plaintiff does not offer any support for this proposition.  Indeed, Plaintiff does not cite to any portion of the record or any exhibits.  Conclusory allegations, without more, are not enough to withstand summary judgment.  *Salguero*, 366 F.3d at 1178.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim that she was terminated in violation of the ADA.

Second, with respect to Plaintiff's claim that Defendant failed to hire her in violation of the

---

[3]I admonish Defendant to complete each step of the *McDonnell Douglas* burden-shifting analysis.  This court cannot be left to guess at Defendant's arguments in the future.

ADA, Plaintiff has demonstrated sufficient pretext.  As stated above, (*Analysis* § 2(a)(3)(B),

*supra*), Plaintiff has demonstrated sufficient evidence that Defendant's alleged reason for failing to

hire Plaintiff was pretextual.  Specifically, Plaintiff has demonstrated a genuine issue of fact with

respect to the validity of the selection process and whether Defendant selected Wilson after it had

knowledge of Plaintiff's interest in the position, but before Plaintiff applied.  (*Id.*)  Accordingly,

Defendant is not entitled to summary judgment with respect to Plaintiff's claim that Defendant

failed to hire her in violation of the ADA.

### c.    *Retaliation*

Plaintiff's first and second claims for relief allege retaliation in violation of Title VII and

the ADA.  (Compl. ¶¶ 32, 37.)  The elements with respect to Plaintiff's retaliation claims under

Title VII and the ADA are the same.  *See Kendrick*, 220 F.3d at 1225–27.  Plaintiff's retaliation

claim follows the framework promulgated in *McDonnell Douglas*, 411 U.S. at 792.  *See also*

*Medina v. Income Support Div., New Mexico*, 413 F.3d 1131, 1135–36 (10th Cir. 2005).  The

burden shifting analysis is the same as that set forth above for the Title VII and ADA claims.

*Medina*, 413 F.3d at 1135.

Plaintiff must first establish a prima facie case of retaliation.  *Id.*  If Plaintiff carries her

burden, Defendant must offer a legitimate nondiscriminatory reason for the adverse employment

action.  *Id.* at 1136.  Once Defendant sets forth a facially nondiscriminatory reason, Plaintiff must

demonstrate that there is a genuine issue of fact as to whether the defendant's reason is

pretextual.  *Id.*  Plaintiff asserts that Defendant failed to hire her in retaliation for her filing an

EEOC complaint in violation of Title VII and the ADA.

### (1)     Prima Facie Case

In order to establish a prima facie case of retaliation, Plaintiff must show that: (1) she engaged in protected opposition to discrimination or participated in a protected proceeding; (2) she suffered an adverse employment action contemporaneous with or subsequent to such opposition or participation; and (3) there is a causal connection between the protected activity and the adverse employment action.  *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857 (10th Cir. 2000); *Jeffries v. State of Kansas*, 147 F.3d 1220, 1231 (10th Cir. 1998).

Defendant does not dispute that Plaintiff engaged in protected opposition by filing an EEOC complaint on February 25, 2003, alleging race and disability discrimination.  (Def.'s Br. at 18, 26.)  Rather, Defendant asserts that Plaintiff cannot demonstrate that (1) the adverse employment action was contemporaneous or subsequent to the protected activity; or (2) there is a causal connection between the two.  (Def.'s Br. at 18, 26.)  Specifically, Defendant contends that "unless the alleged retaliation is very closely connected in time to the protected activity, Plaintiff must rely on other evidence of retaliation."  (*Id.* at 18.)  In support, Defendant relies on *Hysten*, 296 F.3d at 1184.  In *Hysten*, the court determined that three months between the protected opposition and the adverse employment action was too attenuated to meet the causal connection prong of the prima facie case of retaliation absent other evidence of retaliation.  *Id.*

As stated above, Plaintiff filed her EEOC complaint the last week of February 2003. (Def.'s Br., Statement of Undisputed Material Facts ¶ 44; *admitted at* Pl.'s Resp., Resp. to Def.'s

Statement of Undisputed Material Facts ¶ 44.)  Plaintiff applied for the secretarial position on

June 2, 2003, just over three months after she filed the EEOC complaint.  (*Id.*, Statement of

Undisputed Material Facts ¶ 35; *admitted at* Pl.'s Resp., Resp. to Def.'s Statement of Undisputed

Material Facts ¶ 35.)  Barbee, the decisionmaker, knew that Plaintiff had filed a complaint of

discrimination at the time.  (Pl.'s Resp., Statement of Additional Disputed Facts ¶ 150; *admitted*

*at* Def.'s Reply, Resp. Concerning Disputed Facts ¶ 150.)  Further, Plaintiff offered sufficient

evidence that Defendant hired the selectee, Wilson, in May 2003 and Barbee's selection process

was a sham.  Specifically, Plaintiff attached a list dated May 2003, which designates Wilson as the

"new hire as Secretary."  (*Id.*, Ex. 14 at 5 [List of Resignations/Transfers/Vacancies May 2003].)

Defendant asserts the Board did not have Wilson's name until July 2003 and the only reason her

named appeared on the May 2003 list is because Sheryl Wahlert, executive secretary to the board,

forgot to change the date of the document.  (Def.'s Reply, Resp. Concerning Undisputed Facts ¶

35, Ex. A–7 ¶ 3 [Aff. of Sheryl Wahlert].)  There is a genuine issue of fact regarding whether the

position had already been filled prior to Plaintiff's application, yet after Plaintiff informed

Defendant of her interest and filed her EEOC complaint.  Reasonable minds could differ regarding

whether the list containing Wilson's name was created in May 2003 or in July 2003.  Thus,

Plaintiff has demonstrated sufficient evidence to create a prima facie case.

### (2)  *Legitimate Nondiscriminatory Reason and Pretext*

Defendant does not address either of the final two prongs of the *McDonnell Douglas*

burden shifting analysis.  (Def.'s Br. at 18, 26; Def.'s Reply at 18, 22–23.)  I will assume for

purposes of this Order and Memorandum of Decision, that Defendant would assert the same

legitimate nondiscriminatory reason as it did with respect to Plaintiff's Title VII discrimination

claim.  Specifically, Defendant would likely argue that Plaintiff was not as qualified for the

position as the selectee, Wilson.  (Def.'s Br. at 14.)  Assuming this is Defendant's argument, this

is sufficient for Defendant to carry its burden at this stage.

Plaintiff has established sufficient evidence to create a genuine issue of fact regarding

whether Defendant's reasons for not selecting Plaintiff were a pretext of discrimination.  As stated

above, (*Analysis* §§ 2(a)(3)(B) and 2(b)(3), *supra*), Plaintiff has demonstrated that Defendant's

allegedly neutral reason for failing to hire her is pretextual in light of the fact that Defendant's

selection process may have been a sham and Barbee may have selected Wilson prior to the time

Plaintiff submitted her application.  (*Id.*)  Further, Barbee testified that she is not certain exactly

when she implemented the selection process.  (Pl.'s Resp., Statement of Additional Disputed

Facts ¶ 156, Ex. 5 at 101 [Dep. of Sue Barbee].)  Barbee testified that she may have implemented

the official selection process after she interviewed Plaintiff.  (*Id.*)  Thus, Plaintiff has demonstrated

sufficient pretext with respect to her ADA and Title VII retaliation claims.  Accordingly,

Defendant is not entitled to summary judgment with respect to Plaintiff's claim that Defendant

retaliated against her in violation of Title VII and the ADA.

**3.**      ***Conclusions***

Based on the foregoing it is therefore

ORDERED as follows:

-33-

1.      Defendant's motion for summary judgment (# 28) is GRANTED in part and DENIED in part.  Defendant's motion is GRANTED with respect to the following claims: (1) involuntary suspension during the years 2000 and 2001 in violation of Title VII; (2) discriminatory discharge in violation of Title VII; and (3) discriminatory discharge in violation of the ADA.  Defendant's motion is DENIED with respect to the following claims: (1) failure to hire in violation of Title VII; (2) failure to hire in violation of the ADA; and (3) retaliation in violation of Title VII and the ADA.

2.      The court will hold a Final Pretrial Conference commencing at 2:15 o'clock p.m. on **December 15, 2005**, in Courtroom A1001 of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.  In preparing for and participating in the conference, the parties and counsel will (1) follow the Instructions for Preparation and Submission of Final Pretrial Order, a copy of which can be downloaded from the court's web site, specifically http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord_ins.pdf and (2) utilize the specific template located at http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord.wpd  These specific web addresses should be used to insure that the proper format is observed.

Dated this 1st day of December, 2005.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge